UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| RED HED OIL, INC., doing | ) | |
| business as REDI MART NO. 9, | ) | |
| et al. | ) | Civil Case No. |
| | ) | 5:17-cv-180-JMH |
| Plaintiffs, | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | **& ORDER** |
| | ) | |
| THE H.T. HACKNEY CO., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\*

## I.   INTRODUCTION

Sometimes things go awry and we know not why.  Many times, we have an inkling about what happened, but we cannot place our finger on it.  And still other times, we can narrow the possibilities of what caused our misfortune to only a few options.  A teacher finding gum on the floor, for example, can discern that one of his students must be responsible – even if he does not know which particular student is at fault.  And a hunter in the woods struck by a pellet when several friends fire upon a covey of quail flushed from the thicket knows a co-hunter is to blame – though he might not know which person had the errant aim.

This case presents a similar "whodunit": Plaintiffs *think* one of several possible manufacturers is responsible their injury, but

Plaintiffs cannot say exactly which Defendant should pay or exactly how Defendants caused the harm. Instead, Plaintiffs point the finger at several Defendants in hopes that discovery will unveil the culpable party. The question for this Court is whether, when only one Defendant could have caused the injury complained of, Plaintiffs may pass the pleading stage and access discovery without identifying which Defendant is responsible and without specifying how the defendant's products harmed Plaintiffs. The Court holds that Plaintiffs may not do so. Thus, for the reasons stated herein, the defendants' Motion to Dismiss [DE 12] is **GRANTED**.

## II. FACTUAL AND PROCEDURAL HISTORY

Like many consumer products, electronic cigarettes have a shelf life. After a certain amount of time, they go bad. And when they go bad, e-cigarettes can no longer be used. So when Red Hed Oil, Inc. ("Red Hed") failed to sell the stash of e-cigarettes in its convenience store before they expired, the company placed the out-of-date products in a storage room. [DE 1-1 at p. 9, ¶¶19-21]. Defendant The H.T. Hackney Co. ("Hackney") – the company that sold the e-cigarettes to Red Hed – picked up expired e-cigarettes on a bi-weekly basis. [*Id.*, ¶20].

But this time, before Hackney arrived for the pick-up, the out-of-date e-cigarettes went up in smoke. [*Id.*, ¶21]. A fire tore through Red Hed's convenience store and caused more than a

2

quarter-million dollars in damage. [DE 1-1 at p. 10, ¶30]. Red
Hed seeks recovery from the e-cigarette manufacturers in this
products liability action.

Red Hed owns and operates the convenience store and gas
station in Berea, Kentucky. [*Id*. at p. 5, ¶2]. Plaintiff
Federated Mutual Insurance Company ("Federated") holds a
commercial policy on the store. [*Id*. at p. 9, ¶¶27-28]. Known as
"Redi-Mart," the store sold, among other products, e-cigarettes.
[*Id*. at pp. 6-9]. Red Hed purchased the e-cigarettes from Hackney,
a distributor and supplier of grocery products. [*Id*. at p. 5, ¶4;
p. 8, ¶17]. The manufacturing defendants – Swisher International,
Inc. ("Swisher"), Logic Technology Development LLC ("Logic"),
Spark Industries LLC ("Spark"), R.J. Reynolds Vapor Company ("R.J.
Reynolds"), NJoy Inc. ("NJoy"), and Fontem Ventures B.V.
("Fontem") – produced e-cigarettes and supplied them to Hackney.
[*Id*. at p. 8, ¶14]. Hackney then sold the e-cigarettes to Red
Hed. [*Id*., ¶17].

As part of its sale to Red Hed, Hackney agreed to pick up
expired e-cigarettes on a bi-weekly basis. [*Id*. at p. 9, ¶20].
Red Hed placed the e-cigarettes in a box that Hackney collected;
Hackney did not provide any additional instructions. [*Id*., ¶19].
Red Hed claims it was never involved in delivery of the e-
cigarettes to the Redi-Mart and did not tamper with or alter the

products.  [*Id*. at p. 9, ¶¶22-23].  The manufacturing defendants

sold their products to Hackney, and Hackney sent the e-cigarettes

to the Redi-Mart.  The manufacturing defendants did not directly

sell e-cigarettes to Red Hed.

The fire at issue in this case occurred in late April 2016 at

the Berea Redi-Mart.  [*Id*. at p. 9, ¶21].  The blaze damaged Red

Hed's building, equipment, and land, resulting in $258,353.42 in

insurance payments by Federated to Red Hed.  [*Id*. at p. 10, ¶30].

Red Hed argues that expired e-cigarettes, sitting in the storage

room awaiting pickup from Hackney, were defective and sparked the

fire.  [*Id*. at p. 9, ¶21].  The claimed defect in the e-cigarettes

existed at the time of manufacture and was undiscoverable by Red

Hed, according to Plaintiffs' Complaint.  [*Id*. at p. 9, ¶25].

Red Hed and Federated filed this products liability lawsuit

in March 2017 in Madison County Circuit Court against Hackney and

the manufacturing defendants.  [DE 1-1].  Red Hed seeks recovery

from the manufacturing defendants on state-law claims of

negligence, defective manufacture and design, inadequate warning,

breach of express warranty, and breach of implied warranties. [*Id*.

at pp. 16-22].  Red Hed asserted similar claims against Hackney.

[*Id*. at pp. 10-14].

Defendants Hackney and Spark filed answers in state court.

[DE 1-1 at pp. 25, 39].  Defendant Logic removed the case to

federal court in April 2017 on the basis of diversity jurisdiction
pursuant to 28 U.S.C. §§ 1441 and 1332. [DE 1-1]. R.J. Reynolds
and Logic filed answers shortly after removal. [DE 8; 9]. Before
it answered, Swisher filed a Motion to Dismiss pursuant to Fed. R.
Civ. P. 12(b)(6) on May 1, 2017. [DE 12]. After Swisher's motion,
NJoy notified the Court that it filed for Chapter 11 bankruptcy,
and the Court stayed this mater as to NJoy only. [DE 16].
Defendants R.J. Reynolds, Logic, and Spark then filed motions
pursuant to Fed. R. Civ. P. 10(c) to incorporate Swisher's Motion
to Dismiss. [DE 18; 19; 20]. Because R.J. Reynolds, Logic, and
Spark had already filed answers, however, they could not move under
Rule 12(b)(6) and instead sought judgment on the pleadings pursuant
to Fed. R. Civ. P. 12(c), which applies the same standard of review
as Rule 12(b)(6). Plaintiffs did not oppose any of the joinder
motions.

Defendants argue that Plaintiffs' Complaint does not
adequately plead that any Defendant's product caused the fire or
that any product had a defect. [DE 12 at p. 4-8]. Indeed,
according to Defendants, Plaintiffs can only speculate about the
cause of the fire, and they can only speculate that some e-
cigarette was defective.

Plaintiffs responded to Defendants' Motion to Dismiss [DE
25], and Swisher replied [DE 26]. Spark, R.J. Reynolds, and Logic

all moved pursuant to Fed. R. Civ. P. 10(c) to incorporate, join in, and adopt Swisher's reply to Plaintiffs' response. [DE 27; 28; 29]. Defendant Fontem then moved under Rule 10(c) to join Swisher's Motion to Dismiss. [DE 34]. Again, Plaintiffs did not oppose Defendants' joinder motions. Defendant Hackney has not joined any motion before the Court and is thus not affected by this Memorandum Opinion and Order.

Thus, the present motion before the Court asks for dismissal for failure to state a claim as to Defendants Swisher and Fontem and judgment on the pleadings as to Defendants R.J. Reynolds, Spark, and Logic. Plaintiffs have asked for oral argument pursuant to Local Rule 7.1(f). These matters are fully briefed and ripe for the Court's review.

## III. STANDARD OF REVIEW

As an initial matter, the parties dispute what standard applies to Defendants' motion. Plaintiffs urge the Court to apply the state "notice pleading" standard because they filed the Complaint in state court. [DE 25]. According to Plaintiffs, this Court "does not apply the federal pleading standard" when sitting in diversity jurisdiction. [DE 25 at p. 2].

"Kentucky is a notice pleading jurisdiction, where the 'central purpose of pleadings remains notice of claims and defenses.'" *Pete v. Anderson*, 413 S.W.3d 291, 301 (Ky. 2013)

(quoting *Hoke v. Cullinan*, 914 S.W.2d 335, 339 (Ky. 1995)). "Notice pleading" imposes a less-demanding review of a complaint than the "plausibility" standard under the federal rules. *See Williams v. Altman McGuire, McClelland & Crum, P.S.C.*, No. Civ. 12-131-ART, 2013 WL 28378, at *3 (E.D. Ky. Jan. 2, 2013). Thus, if Kentucky law applies, Plaintiffs must meet only the "notice pleading" requirements. But if federal law applies, Plaintiffs must satisfy the higher "plausibility" standard.

In support of their argument that this Court must apply state pleading standards, Plaintiffs cite two cases in this district. *See Combs v. ICG Hazard, LLC*, 934 F. Supp. 2d 915 (E.D. Ky. 2013); *In re Darvocet, Darvon and Propoxyphene Prods. Liab. Litig.*, 889 F. Supp. 2d 931 (E.D. Ky. 2012). These cases, however, involve a fraudulent joinder analysis, and provide no support for Plaintiffs' argument. There, the courts used state pleading standards to determine whether the plaintiffs joined a non-diverse defendant simply to keep the case out of federal court. Under a fraudulent joinder analysis, the test is "whether a reasonable basis exists for predicting that the plaintiff's claims against the non-diverse defendant could succeed under state law." *Combs*, 934 F. Supp. 2d at 923. Where a claim survives state pleading standards, it necessarily means the plaintiff did not join the defendant only to defeat diversity; indeed, the plaintiff has a viable claim under state pleading rules. Thus, "[i]t makes little

7

sense to measure the state-law viability of such claims . . . by federal pleading standards." *Id*. And although state pleading standards govern a fraudulent joinder analysis, they do not apply generally to diversity actions.

Federal courts sitting in diversity apply federal procedural law. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). State substantive law governs the claims asserted. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439 (6th Cir. 1993). Accordingly, federal procedural law and Kentucky substantive products liability law applies to this action.

The Federal Rules of Civil Procedure "apply to a civil action after it is removed from a state court." Fed. R. Civ. P. 81(c)(1); *see also Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 438 (1974) ("The Federal Rules of Civil Procedure, like other provisions of federal law, govern the mode of proceedings in federal court after removal."). Indeed, this Circuit has specifically rejected Red Hed's argument that state pleading standards apply in removed cases. *Armstrong v. Shirvell*, 596 F. App'x 433, 444 (6th Cir. 2015) ("In diversity cases, including those removed from state court, the federal pleading standards apply."); *Wilkey v. Hull*, 366 F. App'x 634, 637 (6th Cir. 2010) (applying federal pleading standard in diversity case). Thus,

this Court rejects Plaintiffs' argument and will apply the federal pleading standards.

A complaint in federal court must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the plaintiff's complaint. The Court views the complaint in the light most favorable to the plaintiff and must accept as true all well-pleaded factual allegations contained within it. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). All reasonable inferences are drawn in favor of the plaintiffs. *See Coley v. Lucas Cnty.*, 799 F.3d 530, 537 (6th Cir. 2015). Although a court must accept as true all well-pleaded factual allegations, they need not accept legal conclusions as true. *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged." *Id*. The "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Rule 8 "does not require 'detailed factual

allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555)). A "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must contain either "'direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013)). Where a complaint does not state facts sufficient to state a claim, the claims must be dismissed. *Twombly*, 555 U.S. at 570.

A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is reviewed under the same standard as a motion to dismiss under 12(b)(6). *Coley*, 799 F.3d at 536-37; *see also Florida Power Corp. v. FirstEnergy Corp.*, 810 F.3d 996, 999 (6th Cir. 2015).

## IV. ANALYSIS

The manufacturing defendants seek dismissal of all of Plaintiffs' claims: (1) negligence; (2) defective manufacture and design; (3) inadequate warning; (4) breach of express warranty; and (5) breach of implied warranties. [DE 1-1 at pp. 16-22]. Although Plaintiffs combine manufacturing defect and design defect into one category, the Court notes these are separate causes of

action in Kentucky. *See, e.g.*, *CertainTeed Corp. v. Dexter*, 330 S.W.3d 64, 79 (Ky. 2010). Defendants argue that each claim fails for the same reason: Plaintiffs fail to plead facts making it plausible that any Defendant caused injury to Plaintiffs. [DE 12 at p. 4]. In addition, Defendants argue the Court should dismiss (1) Plaintiffs' defect claims because Plaintiffs never allege any particular defect and (2) Plaintiffs' breach of warranty claims because Plaintiffs have not alleged they were in privity with Defendants. [DE 12].

## A. Products Liability Overview

Under Kentucky law, "product liability actions are governed by the Kentucky Product Liability Act ("KPLA")." *Prather v. Abbot Labs.*, 960 F. Supp. 2d 700, 705 (W.D. Ky. 2013). The KPLA governs "all damage claims arising from the use of products, regardless of the legal theory advanced." *Mitchell v. Actavis Pharms.*, 185 F. Supp. 3d 971, 974 (W.D. Ky. 2016) (quoting *Monsanto Co. v. Reed*, 950 S.W.2d 811, 814 (Ky. 1997)); *Vaughn v. Konecranes, Inc.*, No. 5:14-136-DCR, 2015 WL 1719672, at *2 (E.D. Ky. Apr. 15, 2015) ("In Kentucky, product liability actions are governed by the Kentucky Product Liability Act"). The Act applies "regardless of whether the action is founded on strict liability in tort, negligence or breach of warranty." *Monsanto*, 950 S.W.2d at 814.

In a products liability case, "[a] plaintiff may advance three different causes of action against a manufacturer: (1) strict liability, (2) negligence, and (3) breach of warranty." *Prather*, 960 F. Supp. 2d at 705 (citing *Williams v. Fulmer*, 695 S.W.2d 411, 413 (Ky. 1985)). In addition, "Kentucky law recognizes three theories of products liability: (i) defective design, (ii) defective manufacture, and (iii) failure to warn." *Vaughn*, 2015 WL 1719672, at *2 (citing *Clark v. Hauck Mfg. Co.*, 910 S.W.2d 247, 251 (Ky. 1995) *overruled on other grounds by Martin v. Ohio Cnty. Hosp. Corp.*, 295 S.W.3d 104 (Ky. 2009)). Plaintiffs may allege multiple theories of products liability. *Clark*, 910 S.W.2d at 250.

## B. Causation

Regardless of the theory a plaintiff pursues, he must show causation in a products liability case. *Morris v. Wyeth Inc.*, No. 1:07-CV-176-R, 2008 WL 2677046, at *2 (W.D. Ky. June 30, 2008) ("defendant's product must have caused Plaintiff's injury to be liable under Kentucky . . . law."); *see also Vaughn*, 2015 WL 1719672, at *2 ("a plaintiff must prove the existence of a defect, and legal causation.") (internal citations omitted); *C & S Fuel, Inc. v. Clark Equip. Co.*, 524 F. Supp. 949, 954 (E.D. Ky. 1981) ("products liability claims . . . have one common denominator: the plaintiff must establish that the product was the factual and legal

cause of the harm."); *Holbrook v. Rose*, 458 S.W.2d 155, 157 (Ky. 1970) ("the product must be the legal cause of the harm"). Causation exists as a "threshold requirement of any products-liability claim," and it requires plaintiffs to "assert that the defendant's product" is responsible for the injury. *Smith v. Wyeth, Inc.*, 657 F.3d 420, 423 (6th Cir. 2011). To prove causation in Kentucky the "plaintiff has the burden . . . to establish causation under the substantial factor test — that is, plaintiff must prove that defendant's conduct was a substantial factor in bringing about a plaintiff's harm." *King v. Ford Motor Co.*, 209 F.3d 886, 893 (6th Cir. 2000); *Burgett v. Troy-Bilt LLC*, 970 F. Supp. 2d 676, 681 (E.D. Ky. 2013) ("the defect must have been a substantial factor in bringing about the plaintiff's harm — in other words, a legal cause of his injury."). The causation analysis is "the same under a negligence theory in a products liability case as . . . under a strict liability theory." *Halsey v. Agco Corp.*, No. 16-cv-461-JMH, 2017 WL 4767679, at *1 (E.D. Ky. Oct. 20, 2017) (citing *Jones v. Hutchinson Mfg., Inc.*, 502 S.W.2d 66, 69-70 (Ky. 1973)).

Where, as here, the case sits at the pleading stage, the plaintiff need not prove his claims, but must make specific factual allegations that, if true, state a plausible claim for relief. *Twombly*, 550 U.S. at 570. Pleading requirements apply to products

liability cases in federal court. *See Hetteburg v. Standard Homeopathic Co.*, No. 2:11-158-DCR, 2012 WL 2683125, at *3 (E.D. Ky. July 6, 2012) (ruling that in products liability case the plaintiff must "plead factual allegations from which the Court can reasonably infer the defendants' liability). In addition, the complaint must contain facts for "all material elements necessary for recovery." *D'Ambrosio*, 747 F.3d at 383. Because causation is a threshold requirement for products liability cases in Kentucky, the plaintiffs bear the burden of pleading facts that make it plausible that the manufacturing defendants caused the harm. "The mere fact that someone believes something to be true" in a products case "does not create a plausible inference that it is true." *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 931 (6th Cir. 2014).

Although Plaintiffs' argument focuses on meeting the Kentucky "notice-pleading" standard (which, as noted above, does not apply here), they alternatively state that the Complaint contains sufficient factual allegations to plead causation plausibly. [DE 25 at p. 5]. First, Plaintiffs explain that each manufacturing Defendant was in the e-cigarette business and had products distributed by Hackney for sale in Red Hed's convenience store. [DE 1-1 at p. 8, ¶14]. Second, Plaintiffs' Complaint states Red Hed placed expired e-cigarettes in a box for pickup by Hackney.

[*Id.* at p. 9, ¶19]. Next, Plaintiffs state that the fire originated in the storage room "due to a defect in the electronic cigarettes and/or because of improper design of the electronic cigarettes." [*Id.*, ¶21]. The Complaint further alleges: "As a direct and proximate result of the electronic cigarettes as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiffs suffered damages as described herein." [DE 1-1 at p. 19, ¶77]. This, Plaintiffs argue, satisfies the pleading standard for causation. Plaintiffs also argue that the "elements of the causes of action and consequent injury to Plaintiffs are pled expressly against each manufacturer." [DE 25 at p. 5].

Taken together, these allegations do not give rise to a reasonable inference that the manufacturing defendants caused Plaintiffs' harm. *See Iqbal*, 556 U.S. at 678. The plaintiffs do not tell us which manufacturer produced the defective e-cigarettes that caused the inferno. They do not tell us how the fire started, other than to generally state that e-cigarettes cause fires. Plaintiffs simply recite legal conclusions that the products "caused" the fire. Inserting Defendants' names into formulaic cause of action language does not satisfy federal pleading standards.

Even assuming the plaintiffs adequately pled that every manufacturing Defendant had defective e-cigarettes in the storage room at the time of the fire, the plaintiffs have not met the causation requirement. Unless every Defendant manufacturer sold defective e-cigarettes that combusted at precisely the same time – an allegation Plaintiffs never make – they cannot all be liable. Only one e-cigarette could have caused the fire. Plaintiffs do not tell us who; they simply sue a range of Defendants they suspect *could be* responsible. Indeed, nothing in the Complaint states that any particular defendant had defective products that caused the fire. Given that only one defective e-cigarette (and thus only one manufacturer) could be responsible for igniting the fire, every manufacturing Defendant cannot be liable. Is a defective Swisher e-cigarette is the cause? What about one from NJoy? Fontem? Logic? Spark? We do not know because Plaintiffs never tell us. Instead, Plaintiffs just sue them all.

It is, of course, *possible* that a defective e-cigarette from any of the manufacturing defendants caused the Redi-Mart fire. But a "complaint that allows the court to infer only a 'mere possibility of misconduct,' is insufficient to 'show' that the complainant is entitled to relief and fails to meet the pleading requirements of Rule 8." *Patterson v. Novartis Pharms. Corp.*, 451 F. Appx 495, 497 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

In *Patterson*, the Sixth Circuit affirmed the District Court's dismissal of the plaintiff's complaint because she could not trace her injury to a specific manufacturer as required by Massachusetts law. *Id*. Instead, the plaintiff alleged that one of two different types of drugs could have caused the harm. *Id*. The Court held that this did not meet the plausibility standard in federal court.

Similarly, here, causation is a threshold requirement under Kentucky law and plaintiffs must assert that "*defendant's* product . . . injured the plaintiff." *Smith*, 657 F.3d at 423 (emphasis in original). Where a complaint names multiple defendants when only one could be responsible it "allows the court to infer only a mere possibility" that a particular defendant caused the harm. *Patterson*, 451 F. App'x at 497. And where a plaintiff cannot plead factual allegations as to which manufacturer caused the harm, the Court may dismiss the complaint for failure to state a claim. *See In re Darvocet, Darvon and Propoxyphene Prods. Liab. Litig.*, 856 F. Supp. 2d 904, 909 (E.D. Ky. 2012) (granting a motion to dismiss where plaintiffs did not know which company produced the drug they ingested that caused the harm). Here, Plaintiffs cannot – and do not – plead that any defendant's product caused the harm. They do not link any manufacturer to the allegedly defective e-cigarette that caused the fire. Instead, they group together every

17

conceivable possibility.  This does not make Plaintiffs' claims plausible.

The Complaint also fails to adequately plead how the fire started.  Other than vaguely asserting that e-cigarettes spark fires, Plaintiffs fail to provide factual allegations that these e-cigarettes did, in fact, cause this fire. Plaintiffs blame it on a defect, but they do not specify what defect, which product was defective, or how the defect sparked the fire.  In short, Plaintiffs present an "unadorned, the defendant-unlawfully-harmed me accusation" that does not give rise to a plausible claim for relief. *Iqbal*, 556 U.S. at 678.  Plaintiffs' claim that Defendants generally caused the fire amounts to a "formulaic recitation of the cause of action" that does not suffice. *Twombly*, 550 U.S. at 555.

Red Hed and Federated argue that Plaintiffs "are not required at this stage to prove the facts regarding the particular defect of the Swisher cigarettes, or how the fire started." [DE 25 at p. 6].  The Court agrees and does not ask Plaintiffs for proof.  The Court merely asks Plaintiffs for facts that would create a reasonable basis for the inference that Defendants are liable. *Iqbal*, 556 U.S. at 678.  Plaintiffs speculate that some e-cigarettes were in the store at the time (though they do not specify which manufacturer's brand), that some defective e-

cigarettes were in the storage room (though they do not say how many or which ones were defective), that some defect caused the fire (though they do not say what type of defect), and that some manufacturer is responsible (though they do not say which one). In other words, Plaintiffs *suspect* that one of the manufacturing defendants *must have* caused the fire. Maybe so. Plaintiffs can speculate, but speculation does not satisfy the pleading requirements in federal court. *Twombly*, 550 U.S. at 555. Indeed, the factual allegations must "raise a right to relief *above* the speculative level.´ *Id.* (emphasis added).

### (i)    Concert of  Action

Red Hed attempts to remedy the pleading defect by invoking a doctrine that allows plaintiffs to sue multiple defendants even if only one defendant caused the harm. This occurs where defendants act in concert with one another. *See Farmer v. City of Newport*, 748 S.W.2d 162 (Ky. Ct. App. 1988). In *Farmer*, the Court quoted the Restatement in adopting "concert of action" as a viable method of imposing liability:

> For harm resulting to a third person from the tortious
> conduct of another, one is subject to liability if he
> (a) does a tortious act in concert with the other or
> pursuant to a common design with him, or (b) knows that
> the other's conduct constitutes a breach of duty and

gives substantial assistance or encouragement to the
other so to conduct himself, or (c) gives substantial
assistance to the other in accomplishing a tortious
result and his own conduct separately considered,
constitutes a breach of duty to the third person.

*Id.* at 164 (quoting *Restatement (Second) of Torts*, § 876).

Thus, in Kentucky, a "plaintiff in a product liability action
could maintain a claim based on concert of action if they proved
the manufacturers acted tortuously, pursuant to a common design,
or rendered substantial assistance to others to accomplish a
tortious act." *Peoples Bank of N. Ky., Inc. v. Crowe Chizek and
Co. LLC*, 277 S.W.3d 255, 261 (Ky. Ct. App. 2008). When a plaintiff
makes this showing, "the burden shifts to Defendants to prove they
are not responsible" for the injury. *Brown v. Arch Wood Prot.,
Inc.*, No. 13-61-HRW, 2017 WL 4274160, at *8 (E.D. Ky. Sept. 26,
2017). This allows a plaintiff to "bypass the causation
requirement if he can prove that the defendants acted tortuously
pursuant to an agreement or common design or that they rendered
substantial assistance to others to accomplish a tortious act."
*Id.*

To maintain a concert of action claim in a products liability
case, the plaintiff must allege specific facts showing how
defendants acted in tandem. *See Smith v. Univar USA, Inc.*, NO 12-

134–ART, 2013 WL 1136624, at *5 (E.D. Ky. Mar. 18, 2013). This requires three steps: (1) the plaintiff identify the product causing the harm; (2) the plaintiff must establish that the defendants cooperated or acted with concerted effort; and (3) the plaintiff must prove defendants contravened a particular standard of care. *Eastridge v. Goodrich Corp.*, No. 3:12CV862-S, 2014 WL 4916236, at *3 (W.D. Ky. Sept. 30, 2014). "Allegations of mere parallel activity of two or more defendants, without more, are insufficient to prove defendants acted by cooperative or concerted activities under the concert of action theory." *Brown*, 2017 WL 4274160, at *8. A plaintiff must point to specific evidence or facts "suggesting an agreement or common design between the defendants." *Id*.

Red Hed argues that the manufacturing defendants acted "in concert with the other or pursuant to a common design." [DE 25 at p. 8]. Plaintiffs argue this is adequately pled in paragraph sixty-nine of the Complaint, but that section does not allege that the defendants "cooperated or acted with concerted effort." *Eastridge*, 2014 WL 4916236, at *3. The plaintiffs do not allege that the defendants collaborated or gave substantial assistance to one another to achieve a tortious result. *See Farmer*, 748 S.W.2d at 164. Plaintiffs do allege that each manufacturing Defendant acted tortuously in similar ways, but "mere parallel activity" is

"insufficient to prove defendants acted . . . under the concert of action theory." *Brown*, 2017 WL 4274160, at \*8. The plaintiffs must allege more facts to suggest an *agreement* or common design among the defendants; Red Hed has failed to plead anything suggesting such an agreement here. *See id*.

Put simply, this case does not fall under *Farmer*. There, the plaintiffs made claims against nearly 100 mattress manufacturers when plaintiffs did not know which manufacturer had produced the defective mattress that caused a fire. *Farmer*, S.W.2d at 163. But in that case, the plaintiffs "alleged in their complaint that the manufacturers . . . acted in concert with each other through the National Association of Bedding Manufacturers . . . to purposely withhold form public consumers information regarding the dangerous nature of mattresses." *Id*. at 164. In short, in *Farmer*, plaintiffs alleged facts that defendants acted cooperatively through an organization to commit a tortious act. *See id*. No such allegations are made here, and nothing in the Complaint suggests as much. Assertions that one of several defendants acted tortuously does not mean the defendants acted tortuously *in concert*, and no specific factual allegations make any such suggestion plausible. Accordingly, Plaintiffs have not adequately pled concert of action.

Finally, Plaintiffs cannot rely on "alternative liability" to bypass adequately pleading causation. This theory, which shifts the burden to defendants when plaintiffs name multiple defendants and only one could be responsible for the harm, is not accepted in Kentucky. *See Dawson v. Bristol Labs.*, 1988 WL 123929 (W.D. Ky. Nov. 3, 1988); *In re Beverly Hills Fire Litig.*, 639 F. Supp. 915, 921 (E.D. Ky. 1986)(describing alternative liability as when "defendants whose particular products cannot be directly linked to the injury" are held responsible and ruling "[t]his notion was expressly rejected in Kentucky"); *Cox v. Cooper*, 510 S.W.2d 530, 534 (Ky. 1974) ("the practical result of" allowing plaintiffs to point to several defendants knowing one is guilty and leaving it to them to sort out "is to shift the burden to defendants, and that is wrong"). Thus, a plaintiff cannot circumvent the causation requirement by suing multiple defendants since all product liability claims require a showing of causation. And because Plaintiffs have failed to adequately plead causation, they have failed to state a claim entitling them to relief.

## C. Defective Design and Defective Manufacture

Even if Plaintiffs satisfactorily pled the causation element, they have failed to point to any defect in the products that would entitle them to relief. In Kentucky, "to impose liability upon a manufacturer for an allegedly defective product, it must be shown

that the product is 'in a defective condition unreasonably dangerous to the user or consumer.'" *Estate of Bingham v. DaimlerChrysler Corp.*, 462 F. Supp. 2d 766, 771 (E.D. Ky. 2006) (quoting *Morales v. Am. Honda Motor Co.*, 151 F.3d 500,506 (6th Cir. 1998)). "In a design defect case, Kentucky courts employ a risk-utility test to 'assess decisions made by manufacturers with respect to the design of their products.'" *Prather*, 960 F. Supp. 2d at 712. The plaintiff must also show that the product was designed as the defendant intended, but that there is a feasible alternative design. *See Burke v. U-Haul In'l, Inc.*, 501 F. Supp. 2d 930, 933 (W.D. Ky. 2007) (citing *Toyota Motor Corp. v. Gregory*, 136 S.W.3d 35, 42 (Ky. 2004)).

A manufacturing defect involves a product "in a defective condition because it was not manufactured or assembled in accordance with its specifications." *Greene v. B.F. Goodrich Avionics Sys.*, 409 F.3d 784, 788 (6th Cir. 2005). This occurs where there is a "deviation from the product's design that creates an unreasonable risk of harm." *Wright v. Gen. Elec. Co.*, 242 S.W.3d 674, 682 (Ky. Ct. App. 2007).

Where "plaintiffs do not assert any facts to support [their] allegations" in a defect case, they cannot survive a motion to dismiss. *See Bosch v. Bayer Healthcare Pharms. Inc.*, 13 F. Supp. 3d 730 (W.D. Ky. 2014). In *Bosch*, the Court dismissed a products

liability claim where plaintiffs failed to allege *how* defendant's products were defective. *Id*. The Court held that it "is not enough for Plaintiffs to simply rely on their basic injury allegations and argue that the product was somehow defective because it was 'dangerous.'" *Id*. at 742. Plaintiffs could not meet the federal pleading standard, the Court ruled, where they merely claimed a defect, without providing specifics on *how* the product was defective. *Id*.

Similarly, the Court in *Burkeen v. A.R.E. Accessories, LLC*, No. 5:16-CV-00017, 2017 WL 3176285 (W.D. Ky. July 26, 2017) dismissed a products liability claim where the plaintiff failed to state *how* the defendant's product was designed or manufactured improperly. There, the Court held that the plaintiff could not gain access to discovery where she "by rote lists the elements of each cause of action in the Amended Complaint." *Burkeen*, 2017 WL 3176285, at *5. These "legal conclusions and bare recitation of the elements of the claims asserted" must be supported by facts to survive a 12(b)(6) motion. *See id*. Without more, the plaintiff has failed to plead a plausible claim or relief.

Here, the plaintiffs suffer the same problem as the plaintiffs did in *Burkeen* and *Bosch*: they fail to explain *how* the e-cigarettes were defective. The plaintiffs argue the Complaint does state that the products were defective. True enough, but nothing

explains *how*.  The plaintiffs do not allege an alternative design, how the products deviated from the intended design, how the e-cigarettes were assembled wrong, or how the e-cigarettes fail the risk-utility test.  Plaintiffs cannot rely on general assertions that the e-cigarettes were dangerous; they must make at least some factual allegations as to *how*. *Bosch*, 13 F. Supp. 3d at 744.  They have not done so.  Like in *Burkeen* and *Bosch*, "[d]ue to the lack of factual allegations" the plaintiffs have failed to plead adequate facts supporting the defect claim.  *Bosch*, 13 F. Supp. 2d at 744.

## D. Breach of Warranty

Finally, the breach of warranty claims fail for an additional reason: the plaintiffs were admittedly not in privity with the manufacturing defendants.  Under Kentucky law, a plaintiff must be in privity with a defendant to state a breach of warranty claim. *See Taylor v. Southwire Tools & Equip.*, 130 F. Supp. 3d 1017, 1021 (E.D. Ky. 2015) ("Kentucky requires privity of contract or a direct buyer-seller relationship for breach of warranty claims"); *Real Estate Mkt., Inc. v. Franz*, 885 S.W.2d 921, 926 (Ky. 1994); *Brown Sprinkler Corp. v. Plumbers Supply Co.*, 265 S.W.3d 237, 240 (Ky. Ct. App. 2007) ("privity of contract between the parties is prerequisite to a clam for breach of warranty.").  This rule applies to products liability actions.  *Taylor*, 120 F. Supp. 3d

1017 (applying privity requirement to products liability action); *Compex Int'l Co, Ltd. V. Taylor*, 209 S.W.3d 462, 464 (Ky. 2006) ("privity remains a prerequisite for products liability claims based on warranty").

Here, Plaintiffs agree that "privity is an element of the cause of action." [DE 25 at p. 12]. And they agree that Red Hed purchased the e-cigarettes from Hackney, not the manufacturing defendants. [*Id.*]. Thus, Red Hed and the manufacturing defendants were not in privity. Plaintiffs do not plead that they were in privity. And because privity is an element of a breach of warranty claim, failing to plead privity means the plaintiffs have not adequately stated a claim for relief.

## V.   CONCLUSION

In sum, Plaintiffs hope to access discovery by reciting the elements of a cause of action and inserting Defendants' names. They believe – have an inkling – that one of the defendants is responsible, but they cannot say who, and they cannot say how. So Plaintiffs sued them all. This they cannot do. The burden of pleading sufficient facts to state a plausible claim for relief rests with the plaintiffs. And entry through the courthouse doors is not granted simply because a plaintiff is suspicious that manufacturers' products are responsible. Because the plaintiffs have failed to adequately plead sufficient facts to demonstrate

causation, the existence of a defect, or privity, they have failed to state a products liability claim under Kentucky Law.

Accordingly, **IT IS ORDERED** as follows:

(1) Defendants Logic, Spark, R.J. Reynolds, and Fontem's motions for joinder of Defendant Swisher's Motion to Dismiss [DE 18; 19; 20; 34] are **GRANTED;**

(2) Defendant Swisher's Motion to Dismiss for failure to state a claim [DE 12] is **GRANTED;**

(3) All claims against Swisher International, Inc., Logic Technology Development LLC, Spark Industries LLC, R.J. Reynolds Vapor Company, and Fontem Ventures B.V. are **DISMISSED;**

(4) Plaintiffs request for oral argument pursuant to Local Rule 7(f) is **DENIED.**

This the 14th day of November, 2017.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge